KENOSHA UNIFIED SCHOOL DISTRICT NO. 1., Respondent, v. KENOSHA EDUCATION ASSOCIATION, and others, Appellants.

*No. 157 (1974). Argued October 2, 1975.—Decided October 28, 1975.*
(Also reported in 234 N. W. 2d 311.)

For the appellants there were briefs by *John C. Carl-son* and *Lawton & Cates,* all of Madison, and oral argument by *Mr. Carlson.*

For the respondent there was a brief by *Davis, Kuelthau, Vergeront, Stover & Leichtfuss, S. C.*, attorneys, and *Walter S. Davis* and *John P. Savage* of counsel, all of Milwaukee, and oral argument by *Mr. Savage*.

BEILFUSS, J.   The Kenosha Education Association contends the trial court erred in assessing any fine against it and, if this was not error, the fine assessed was in excess of the statutory maximum permitted in either sec. 111.70 (7) or sec. 295.14, Stats., and therefore error.

The Kenosha Unified School District contends the court abused its discretion in reducing the fine imposed upon the association to $3,000.

Upon finding defendants in contempt for having violated the order for temporary injunction, the circuit court fined the individual defendants $10 for each day of violation and the Kenosha Education Association $7,500 for each day of violation. The fines assessed against the individuals are not at issue on this appeal. The fine assessed against the association was later reduced to a total of $3,000. The defendant association's first contention on appeal is that the court erred in imposing any fine on the association as a separate entity. It asserts that the penalty for contempt for violating an injunction issued against a municipal employees' strike is controlled by the provisions of sec. 111.70 (7), Stats. That section provides:

"PENALTY FOR STRIKER. Whoever violates sub. (4) (1) after an injunction against such a strike has been issued shall be fined $10. After the injunction has been issued, any employee who is absent from work because of purported illness shall be presumed to be on strike unless the illness is verified by a written report from a physician to the employer. Each day of continued violation constitutes a separate offense. The court shall order that any fine imposed under this subsection be paid by means of a salary deduction at a rate to be determined by the court."

The association argues that the history of that section indicates a legislative intent that no fine in excess of $10 per day may be imposed on individual strikers. Relying on a rule that association liabilities must ultimately be borne by its individual members, it asserts that the intent of the statute is thwarted where a court imposes an additional fine on the association as a separate entity.

The school district disputes defendants' claim that sec. 111.70 (7), Stats., limits a court's authority to punish by contempt the violation of injunctional orders against municipal employee strikes, and contends that the legislative intent, argued by the teachers' association to be evident from the section's history, is not thwarted in this case.

The record indicates that there were 1,150 teachers in the district. At the September 14th hearing, Otto Huettner, superintendent of schools, stated that approximately 400 teachers reported for work on September 5th and thereafter. At the contempt hearing on September 19th, Huettner testified that 397 teachers reported for work on September 17th and 18th following the issuance of the injunction. In his affidavits in support of the order to show cause for temporary injunction and the order to show cause for contempt, Huettner asserted that only 380 teachers reported on September 6th and that 750 remained on strike on Monday, September 17th. The district contends that this record indicates that, at various times during the strike, 750 teachers failed to report for work. It is further argued that the original fine of $7,500 per day imposed by the court on the association is consistent with the statutory formula ($10 per striker $\times$ 750 strikers = $7,500).

We conclude that the plain language of sec. 111.70 (7), Stats., indicates that it was intended to serve only as a limitation on the fine which might be imposed upon individual strikers who are found to have violated an in-

junction issued against an illegal strike. The section provides that "whoever" continues to strike in the face of an injunction "shall be fined $10." It appears to be the rule that when the word "whoever" is employed in a statute, it is considered to refer only to "persons," whether natural or corporate, and not to unincorporated associations.[2] This principle is fortified in this case by the last sentence in the section which states that the fine imposed shall be paid by means of a salary deduction. It cannot be logically argued that this sentence refers to any entity but an individual municipal employee. The association did not receive a salary, and obviously none from the district.

However, we believe the provisions of sec. 111.70 (7), Stats., do not, standing alone, preclude the imposition of an additional fine on the association as a separate entity. This court has held that an unincorporated association, such as a labor organization, has the capacity to sue and be sued on behalf of its members.[3] If the unincorporated association, here the Kenosha Education Association, which purports to act for its members, can be sued, it follows that it must be responsive to the orders of the court and can be found in contempt for violations of such orders[4] under the general civil contempt statutes as provided in ch. 295, Stats.

Sec. 295.14, Stats., provides:

"**Indemnifying loss; fine.** If an actual loss or injury has been produced to any party by the misconduct alleged the court shall order a sufficient sum to be paid by the

[2] *See: State v. Lodge of Loyal Order of Moose* (1949), 151 Ohio St. 19, 84 N. E. 2d 498; *Bridgeport v. Fraternal Order of Eagles* (1954), 97 Ohio App. 245, 125 N. E. 2d 202.

[3] *Teubert v. Wisconsin Interscholastic Athletic Asso.* (1959), 8 Wis. 2d 373, 99 N. W. 2d 100; *Fray v. Amalgamated, etc., Local Union No. 248* (1960), 9 Wis. 2d 631, 101 N. W. 2d 782.

[4] *See:* 8 Wisconsin Law Review (1933), 334, *Statute Law, Contempt—Review of Wisconsin Legislation.*

defendant to such party to indemnify him and to satisfy his costs and expenses, instead of imposing a fine upon such defendant; and in such case the payment and acceptance of such sum shall be an absolute bar to any action by such aggrieved party to recover damages for such injury or loss. Where no such actual loss or injury has been produced the fine shall not exceed two hundred and fifty dollars over and above the costs and expenses of the proceedings."

Under this statute there are two alternatives: The contemnor can be ordered to pay the actual expenses occasioned by his contempt plus the costs and expenses, or $250 plus the costs and expenses. The record here does not reveal any actual monetary damage suffered by the school district. Therefore, under this statute, the fine must be limited to $250 plus costs and expenses.

Wisconsin has consistently held that the power to punish for contempt is a power inherent in the courts.[5] In *State v. Cannon* (1928), 196 Wis. 534, 221 N. W. 603, this court stated at pages 536, 537:

". . . In order to accomplish the purposes for which they are created, courts must also possess powers. From time immemorial, certain powers have been conceded to courts because they are courts. Such powers have been conceded because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence. These powers are called inherent powers. . . .

"Among such powers is the power to preserve order, command obedience to its orders, and to punish for contempt . . . ."

In numerous other cases the court has stated that the contempt power is inherent in the courts and exists independently of any particular grant of such power by

[5] *See* the thorough analysis of this subject in Comment, *Contempt—Control by the Courts and by the Legislature in Wisconsin,* 9 Wisconsin Law Review (1934), 278.

the constitution or the legislature.[6] The court has also consistently held, however, that this power is subject to reasonable regulation by the legislature.[7]

The district contends that the limitation imposed by sec. 295.14, Stats., constitutes an impediment to the power of a court to enforce its lawful orders and preserve its dignity and authority. It points out that if a penalty in a civil contempt case is intended to induce the contemnor to obey an order, that objective cannot be attained by imposing a penalty of only $250. Plaintiff cites several cases wherein the courts of other jurisdictions have held that a similar limitation on the penalty which may be assessed for contempt constituted an unreasonable restriction on the courts' inherent power. *See: State ex rel. Oregon State Bar v. Lenske* (1965), 243 Ore. 477, 405 Pac. 2d 510, 407 Pac. 2d 250, certiorari denied, 384 U. S. 943, 86 Sup. Ct. 1460, 16 L. Ed. 2d 541, rehearing denied, 384 U. S. 1028, 86 Sup. Ct. 1920, 16 L. Ed 2d 1047; *Levisa Stone Corp. v. Hays* (Ky. App. 1968), 429 S. W. 2d 413; *Arnett v. Meade* (Ky. App. 1971), 462 S. W. 2d 940.

The association argues in its reply brief that regulation in the area of labor relations should be and has been left to the legislature. *See: American Furniture Co. v. I. B. of T. C. and H. of A., etc.* (1936), 222 Wis. 338, 268 N. W. 250. It implies that if the legislature had deemed it necessary to impose a greater penalty on public employee associations than that provided by sec. 295.14, Stats., it would have done so. In view of the apparent legislative

---

[6] *See: Appeal of Cichon* (1938), 227 Wis. 62, 278 N. W. 1; *Rubin v. State* (1927), 192 Wis. 1, 211 N. W. 926; *State ex rel. Rodd v. Verage* (1922), 177 Wis. 295, 187 N. W. 830; *In re Meggett* (1900), 105 Wis. 291, 81 N. W. 419; *State v. Dickson* (1972), 53 Wis. 2d 532, 193 N. W. 2d 17.

[7] *See: Jos. Schlitz Brewing Co. v. Washburn Brewing Asso.* (1904), 122 Wis. 515, 100 N. W. 832; *State ex rel. Lanning v. Lonsdale* (1880), 48 Wis. 348, 4 N. W. 390; *Rubin v. State, supra.*

decision not to do so, defendants contend that the $250 penalty is not unreasonable.

In a recent Washington case, individual teachers and an education association were held in contempt for violating a temporary injunction prohibiting a teachers' strike. A fine was imposed on the association of $1,000. The teachers argued on appeal that this fine was in excess of the $100 penalty authorized for civil contempts by a Washington statute. In *Mead School District No. 354 v. Mead Education Asso.* (1975), 85 Wash. 2d 278, 534 Pac. 2d 561, the Washington Supreme Court held that the court has inherent power to punish for contempt and held that while the legislature may regulate that power, it may not diminish it so as to render it ineffectual. However, the court ruled that the $1,000 fine could not stand because the trial court had made no finding that the statutory $100 penalty would impair its contempt power in that case. The fine against the association was modified by the court to fit within the $100 maximum set by the statute.

In this case there is no specific finding by the trial court that its power would be rendered ineffectual by the limitation set by sec. 295.14, Stats. Such a finding is necessary if the fine imposed is to exceed these limitations.

We conclude, therefore, that the maximum fine that could have been imposed upon the Kenosha Education Association was $250 plus reasonable costs and expenses of the proceedings. The record must be remanded for an imposition of a fine not to exceed $250. In addition thereto, the school district shall be given an opportunity to establish its reasonable and necessary costs and expenses of the proceedings.

In view of this disposition of the appeal, we do not reach the district's contention that the trial court abused its discretion in reducing the fine.

*By the Court.*—Order reversed and remanded for further proceedings. No appeal costs to be taxed.