JACOBSON, and another, Plaintiffs-Appellants, v. AVES-TRUZ, and others, Defendants-Appellants: CIRCUIT COURT FOR DUNN COUNTY, Hon. John G. Bartholomew, Circuit Judge, Presiding, Third-Party Respondent.

*No. 75–653.  Argued November 2, 1977.—*
*Decided December 13, 1977.*
(Also reported in 260 N.W.2d 267.)

■

For appellants there was a joint brief by *James A. Drill* of New Richmond, and *Roy S. Wilcox* of Eau Claire, and oral argument by *Mr. Drill* and *Mr. Wilcox.*

For the respondent there was a brief and oral argument by *Robert L. Oesterreicher,* assistant district attorney of Menomonie.

HANLEY, J. Two issues are presented for review:

1. Does the respondent have the authority to assess the costs of impaneling a jury against the parties to this action?

2. If the respondent has such authority, was its exercise in the instant case an abuse of discretion?

*Authority To Assess Costs of Impaneling the Jury*

The basis of the appellants' appeal is that the respondent lacked the authority in this instance to assess the costs of impaneling the jury. They contend that the only statutory authority for assessing such fees is granted to courts by sec. 270.165, Stats. (1973) (814.51, Stats. (1975)) and because, in their opinion, this statute was inapplicable to the case at bar, the respondent was without authority to tax these costs. The respondent, on the other hand, contends that these costs were not imposed under sec. 270.165, Stats., but rather by virtue of the inherent power of the court.

Sec. 270.165, Stats., provides as follows:

"**Jury fees; discretion of court.** The court shall have discretionary authority in any civil or criminal action or proceeding triable by jury to assess the entire cost of one day's juror fees for a jury of 6 or 12, whichever is demanded, including all mileage costs, against either the plaintiff or defendant or to divide the cost and assess

same against both plaintiff and defendant, or additional parties plaintiff or defendant, if a jury demand has been made in any case and in the event a jury demand is later withdrawn within 48 hours prior to the time set by the court for the commencement of the trial. The party assessed shall be required to make payment to the clerk of circuit court within a prescribed period and the payment thereof shall be enforced by contempt proceedings."

The above statute is, on its face, inapplicable to the case at bar. The parties did not withdraw their jury demand within 48 hours prior to the time set by the court for the commencement of the trial. Rather, counsel reached a settlement after selecting a jury and making opening statements. It is clear the purpose of the statute is to allow at least 2 days' notice of withdrawal of the demand so that the impaneling of a jury could be cancelled. But it is equally clear that the statutory discretion to assess these costs is limited to those situations in which the jury demand is withdrawn within the 48 hour period preceding the trial.

However, the fact that the legislature has by statute granted trial courts discretionary authority to impose jury costs upon parties withdrawing their demand for a jury does not limit an inherent power of the court to exercise the same discretion if such inherent power exists. *Latham v. Casey & King Corp.,* 23 Wis.2d 311, 315–16, 127 N.W.2d 225 (1964). Thus, the existence of this power must be determined.

This court has previously discussed the scope of the inherent powers of the courts of this state, but not directly in relation to the imposition of jury impaneling costs. In *State v. Cannon,* 196 Wis. 534, 536–37, 221 N.W. 603 (1928) this court summarized the nature of the powers inherent to the courts as follows

"In order that any human agency may accomplish its purposes, it is necessary that it possess power. The executive must have power to direct and control his business. The superintendent of the works must have power to direct his men. In order to accomplish the purposes for which they are created, courts must also possess powers. From time immemorial, certain powers have been conceded to courts because they are courts. Such powers have been conceded because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence. These powers are called inherent powers. In *In re Court Room*, 148 Wis. 109, 121, 134 N.W. 490, it was said:

" 'The authorities, in so far as any can be found on the subject, are to the effect that a constitutional court of general jurisdiction has inherent power to protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency. A county board has no power to even attempt to impede the functions of such a court, and no such power could be conferred upon it.'

"In *In re Bruen*, 102 Wash. 472, 172 Pac. 1152, the supreme court of Washington said:

" 'The inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy had been granted or not; the power to promulgate rules for its practice; and the power to provide process where none exists. It is true that the judicial power of this court was created by the constitution, but upon coming into being under the constitution, this court came into being with inherent powers.' "

Since *State v. Cannon*, this court has made reference to the inherent powers of the courts in various contexts. In *In re Cannon*, 206 Wis. 374, 393, 240 N.W. 441 (1932), this court discussed the concept of the judiciary's inherent powers and the immunity of these powers from legislative abrogation. In *Latham v. Casey & King Corp.*, *supra* at 314–15, this court stated:

"It is considered well established that a court has the inherent power to resort to a dismissal of an action in the orderly administration of justice. *The general control*

*of the judicial business before it is essential to the court if it is to function.* 'Every court has inherent power, exercisable in its sound discretion, consistent within the Constitution and statutes, to control disposition of causes on its docket with economy of time and effort.' 14 Am. Jur., Courts, p. 371, sec. 171, Inherent Powers of Courts, 1963 Supp., p. 77." (Emphasis supplied.)

Therefore, this court concluded that statutes enacted to aid a court in the orderly administration of the judicial business did not abrogate or negate the inherent powers of the court. In *Lawrence v. MacIntyre,* 48 Wis.2d 550, 554–56, 180 N.W.2d 538 (1970), this court, relying on *Latham v. Casey & King Corp.,* held that the statutory discretion to dismiss actions which had not been brought to trial within five years of their commencement did not lessen the court's inherent power to dismiss actions at an earlier time because the authority of a court to relieve the courts of stale lawsuits was a form of the court's inherent power. This holding was reiterated in *Zeis v. Fruehauf Corporation,* 56 Wis.2d 486, 489, 202 N.W.2d 225 (1972).

In *Kenosha Unified School District v. Kenosha Education Association,* 70 Wis.2d 325, 333, 234 N.W.2d 311 (1975), the power of a court to punish for contempt was characterized as an inherent power of the court existing independently of any particular grant of such power by the constitution or legislature. However, this court added that this power is subject to reasonable regulation by the legislature.

Recently this court discussed the inherent powers of the courts in terms of authority of this court to promulgate a Judicial Code of Ethics. *State ex rel. Lynch v. Dancey,* 71 Wis.2d 287, 238 N.W.2d 81 (1976) ; *In re Hon. Charles E. Kading,* 70 Wis.2d 508, 235 N.W.2d 409 (1975).

Based upon these decisions, it is clear that this court has characterized the inherent power of courts as possessing two primary features: (1) the power must be such that it is related to the existence of the court and to the orderly and efficient exercise of its jurisdiction; and (2) the power must not extend the jurisdiction of the court nor abridge or negate those constitutional rights reserved to individuals. *See* 20 Am. Jur. 2d, *Courts,* sec. 78 (1965).

The authority to assess the costs of impaneling a jury upon parties withdrawing a demand for a jury trial is a power necessarily related to the existence of the courts and to the orderly and efficient exercise of its jurisdiction. The exercise of such power does not abridge or negate the rights of individuals preserved by the constitution.

We are satisfied that courts, in the exercise of proper discretion, have the inherent authority to assess the costs of impaneling a jury. Each case, however, should be considered in the light of the particular facts and circumstances.

*Abuse of Discretion*

We are satisfied that in the instant case counsel for both parties acted in good faith in reaching a settlement. There is no evidence that either counsel unduly utilized the demand for a jury trial as a wedge to force a settlement.

The case was difficult to evaluate. The plaintiffs' original settlement demand was $50,000. The defendants' first settlement offer was $10,000. Subsequently, the plaintiffs' counsel informed the defendants' counsel that he would be willing to recommend a settlement offer of

$30,000. The voir dire established that approximately one-half of the jurors were patients of one or the other of the defendant doctors. Examination of the panel further revealed that two of the jurors had only one kidney and that neither of the two had experienced problems from the lack of a kidney. These disclosures, on the one hand, certainly affected the plaintiff's settlement posture. On the other hand, the discovery that the chief surgeon had recently had his privileges suspended at the local hospital was a factor which prompted the defendants to raise their offer from $10,000 to $17,000.

We conclude that under the facts and circumstances of this case, it was an abuse of discretion to assess the parties $486.40 as cost of jury fees.

*By the Court.*—Order reversed.